FILED

JUN 2 1 2017

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CRIMINAL NO.** 17-30111-DRH |
| | ) | |
| **SCOTT D. ALEXANDER and,** | ) | |
| **NANCY L. ALEXANDER,** | ) | **29 U.S.C. § 501(c)** |
| | ) | **18 U.S.C. §1343** |
| **Defendants.** | ) | |

**INDICTMENT**

**THE GRAND JURY CHARGES:**

**COUNT 1**

**EMBEZZLEMENT AND THEFT FROM A LABOR UNION**

1. From on or about January of 2012 and continuing through June 30, 2016, in St. Clair County, within the Southern District of Illinois, and elsewhere,

**SCOTT D. ALEXANDER** and **NANCY L. ALEXANDER**,

defendants herein, aided and abetted each other, while employees of Local 50 of the International Brotherhood of Teamsters, a labor organization engaged in an industry affecting commerce, did embezzle, steal and unlawfully and willfully abstract and convert to their own use the money, funds, properties, and other assets of said labor organization.

2. Local 50 is a chartered local union of the International Brotherhood of Teamsters (IBT). Local 50 represents approximately 2,393 workers, working at a variety of jobs, trades, or crafts; negotiating and administering collective bargaining agreements between its members and numerous employers located throughout the southeastern portion of Illinois. Members were required to pay dues to the Union at the rate of two and a half times their hourly rate each month.

3. **SCOTT D. ALEXANDER** was the Local's president and a business agent from 2011 to July 15, 2016, when the International Brotherhood of Teamsters placed the Local under trusteeship. As president, he was the Local's principle officer and a signatory on the Local's accounts. In March 2013, the Local hired his wife **NANCY L. ALEXANDER** as the Local's office administrator. It was the Local Union's practice for the office administrator or bookkeeper to actually create and maintain the Local's financial records. In April 2015, **SCOTT D. ALEXANDER** appointed **NANCY L. ALEXANDER** as a business agent for the Local along with her duties as office administrator, which she did until April 8, 2016. As office administrator, she recorded and maintained the financial transactions of the Local, administered the payroll, wrote the paychecks and checks to pay the demands of the Local.

4. From January 1, 2012 through June 30, 2016, during the time **SCOTT D. ALEXANDER** was Local 50 President/Business Agent and his wife **NANCY L. ALEXANDER** was the Local's office administrator, the Alexanders embezzled and converted Union funds by using the Union's credit card to make personal purchases, manipulating their payroll withholdings in order to increase their net pay at the Local's expense, receiving more vacation pay than earned, receiving salary while on vacation, and receiving additional auto allowance payments.

**Background to the Scheme to Defraud**

5. According to the by-laws and policies of the International Brotherhood of Teamsters, the Union is only supposed to pay for expenses "when a representative of the organization is engaged in activities in the interest of or for the benefit of the organization and its members within the scope of his authority." Therefore, the Union was only supposed to pay for expenses that benefited the Union and not for personal expenses.

6. The business agents each had a Union credit card assigned them to use to pay legitimate expenses incurred by cardholders to conduct Union business. The cardholder was required to provide a receipt for all charges made with the Union's card. The receipt should document: the vendor, the purchase amount, the item or items purchased, the Union purpose for the purchase, the names of individual(s) for whom the purchase was made, the purchase date, and the location where the purchase occurred. Personal purchases with the Union's credit card were not allowed. If a receipt was lost, the cardholder was required to complete an affidavit explaining the expense, which was supposed to be reviewed for legitimacy and verified by the executive board. The office administrator had a Union credit card to purchase supplies for the Union as needed. Each month, cardholders were supposed to submit a voucher listing the expenses that were charged along with receipts, folios, invoices, vehicle mileage - for gasoline purchases, etc. for the expense or credit card charges. In addition to listing the credit card charges, Union expenses that were paid with personal funds by a business agent, office staffer, or member are also listed on the voucher and the amount of the expenses to be reimbursed.

7. At all times **SCOTT D. ALEXANDER** and **NANCY L. ALEXANDER** were aware that they were prohibited from making personal expenses with Union funds. **SCOTT D. ALEXANDER,** on June 1, 2011, was sent the results of the 2010 audit by the International Brotherhood of Teamsters. He was advised, "UNDER NO CIRCUMSTANCES SHOULD PERSONAL EXPENSES BE CHARGED TO AND/OR RUN THROUGH THE LOCAL UNION BOOKS."

8. **SCOTT D. ALEXANDER** and **NANCY L. ALEXANDER** were advised by a Department of Labor Office of Labor Management Standards audit, dated June 18, 2013, that the Local Union "did not retain adequate documentation for reimbursed expenses and credit card

expenses incurred by Union officers and employees." **SCOTT D. ALEXANDER** as president of the Local assured the Department of Labor that they would retain adequate documentation in the future.

9. **SCOTT D. ALEXANDER** and **NANCY L. ALEXANDER** were advised by the General Counsel of the International Brotherhood of Teamsters, on December 4, 2014, that they must have itemized receipts for meals and similar expenses when conducting Union business. General counsel further advised that the International Brotherhood of Teamsters has "found that failure to retain itemized receipts has assisted on occasion employees embezzlement activities and improper reimbursements."

10. The Union's auto allowance policy stated that all full-time paid officers and business agents will receive an allowance for use of their personal auto in the amount of $833.34 per month/$10,000.00 annually, not to include the cost of gasoline. In 2015, **SCOTT D. ALEXANDER** received fourteen payments for his auto allowance in violation of the Local's auto allowance policy. **SCOTT D. ALEXANDER** received two improper auto allowance payments during 2015, an overpayment of $1,666.68. In April of 2015, **SCOTT D. ALEXANDER** received two payments, the usual payment on April 30 and a second one earlier on April 13, which was paid by check rather than the usual method of direct deposit. The second overpayment occurred on August 1, 2015 even though he had just received an auto allowance payment for July the previous day. His August allowance payment was paid on August 31. Additionally, on August 30, 2014, **SCOTT D. ALEXANDER** made a purchase of $924.17 at Tire Kingdom in St. Petersburg, Florida, using the Union's credit card. The Local did not maintain any support documentation for this transaction.

11. The International Brotherhood of Teamsters required an annual audit of Local 50's finances to be conducted by an outside accounting firm. The same outside accounting firm had been conducting the independent audit for approximately forty-five years. In January of 2016, the accountant was unable to complete the audit report on time as he was unable to timely obtain the necessary Union records.

12. In January of 2016, **SCOTT D. ALEXANDER** and **NANCY L. ALEXANDER** failed to show up for a meeting with the accountant to obtain the Local's records. **NANCY L. ALEXANDER** failed to turn over the Union credit card records although the accountant repeatedly asked for them.

13. On March 3, 2016, **SCOTT D. ALEXANDER** and **NANCY L. ALEXANDER** were notified by the Independent Disciplinary Officers, Office of the Independent Investigations Officer, for the International Brotherhood of Teamsters, that they were going to examine the books and records of Local Union 50 and to make all of the records available for inspection beginning March 16, 2016.

14. By check dated March 11, 2016, **NANCY L. ALEXANDER** made a repayment to the Local 50 from the account of **SCOTT D. ALEXANDER** and **NANCY L. ALEXANDER** in the amount of $3,170.66 for reimbursement of personal expenses.

15. On March 30, 2016, the accountant went to the Local's business office and insisted on obtaining the credit card records. A listing of personal charges by **NANCY L. ALEXANDER** was produced totaling $3,170.66 that were made with her assigned Union credit card. Also produced was a record showing the payment of $3,170.66 back to the Local that was classified as a "reimbursement error repayment" for personal use of the Union's credit card during 2014 and 2015.

16. On March 31, 2016, the accountant contacted the attorney for the local labor Union for assistance in obtaining the requested records. The attorney for the Local contacted **SCOTT D. ALEXANDER** for assistance in obtaining the records from **NANCY L. ALEXANDER**.

17. On April 4, 2016, **NANCY L. ALEXANDER** surrendered her Union credit card, pending an investigation of her credit card charges.

18. On April 5, 2016, the accountant and the attorney for the Local met with **SCOTT D. ALEXANDER** to discuss necessary actions to address the misappropriate use by **NANCY L. ALEXANDER** of the Union's credit card. The attorney indicated that **NANCY L. ALEXANDER** would have to be terminated from her position as office manager of the Union and that a complete audit would need to be done of **NANCY L. ALEXANDER**'s credit card expenses and all Union credit card holders. On that date, **SCOTT D. ALEXANDER** refused to terminate the employment of **NANCY L. ALEXANDER**.

19. On April 5, 2016, **SCOTT D. ALEXANDER** was advised by the accountant that **NANCY L. ALEXANDER** had under withheld both **ALEXANDER**s Social Security and Medicare withholdings. **NANCY L. ALEXANDER** had to go in and manually change the percentage of withholdings for Social Security and Medicare including no withholdings for federal and state income tax. When the withholdings are inadequate, the Union must overpay its portion to make up for the amount that should have been withheld. **SCOTT D. ALEXANDER** advised the accountant that they would not repay the Union for the under withholdings.

20. On April 6, 2016, **NANCY L. ALEXANDER** emailed a letter of resignation to the Secretary-Treasurer of the Union. On April 7, 2016, she emailed him again asking him to

disregard the resignation letter. On April 8, 2016, **NANCY L. ALEXANDER** emailed him another resignation letter and turned in her office keys

21. On April 7, 2016, **SCOTT D. ALEXANDER** fired the attorney representing the Local.

22. On April 12, 2016, **NANCY L. ALEXANDER** submitted a check to the Union's Secretary-Treasurer in the amount of $3,485.10 for reimbursement of non-business expenses. She provided a listing of $5,236.34 of personal charges she admitted making on the Union's credit card. It was ultimately determined that her personal use of the Union credit card greatly exceeded the amount that she admitted to and paid in reimbursement.

23. On May 6, 2016, **SCOTT D. ALEXANDER** called the independent accountant and fired him without explanation before the accountant could complete the audit of the credit card use.

24. Following an audit conducted by the International Brotherhood of Teamsters, and another audit conducted by the U.S. Department of Labor, Office of Labor Management Standards, it was determined that **SCOTT D. ALEXANDER** and **NANCY L. ALEXANDER** both made numerous personal purchases with the Local Union's credit cards that were assigned to them that included, concert tickets, airfare, alcohol, clothing and apparel store purchases, restaurant expenditures, purchases at Target, Walmart, Starbucks, grocery stores, Home Depot, TJ Maxx and many others,

All in violation of Title 29, United States Code, Section 50l(c) and Title 18, United States Code, Section 2.

## COUNT 2

### FORESEEABLE INTERSTATE WIRE COMMUNICATION IN FURTHERANCE OF SCHEME TO DEFRAUD UNION LOCAL 50, INTERNATIONAL BROTHERHOOD OF TEAMSTERS: TICKETS TO THE BIG HEAD TODD AND THE MONSTERS

1. The allegations set forth in paragraphs 1 through 23 of Count 1 are incorporated by reference.

2. On or about October 31, 2014, in St. Clair County, within the Southern District of Illinois, and elsewhere,

**NANCY L. ALEXANDER,** defendant,
aided and abetted by **SCOTT ALEXANDER**, defendant,

for purposes of executing, and attempting to execute the above-described scheme and artifice to defraud and deprive, knowingly caused to be transmitted a wire communication in interstate commerce which was foreseeable in the ordinary course of business, a credit card transaction on the Teamsters Local 50 account in the amount of $350 to purchase four tickets to the Big Head Todd and the Monsters concert at the Pageant in St. Louis for personal use. The tickets were for a concert on February 26, 2015, attended by **NANCY L. ALEXANDER** and **SCOTT ALEXANDER** with two other individuals, which was not for Union business. **NANCY L. ALEXANDER** falsely listed the purchase as entertainment for negotiations on her expense voucher. The night of the concert, **SCOTT ALEXANDER** used his Union credit card to purchase meals and drinks; however, he provided three receipts for meals and drinks that night with falsified documentation on the receipts. The business purpose for the purchase of the tickets on Nancy's receipt was falsely listed as "negotiations." The business purpose on **SCOTT ALEXANDER's** three receipts falsely said "Organizing Abbott Ambulance, negotiations & organizing campaign."

All in violation of Title 18, United States Code, Section 1343.

A TRUE BILL

[redacted]

DONALD S. BOYCE
United States Attorney
Southern District of Illinois

NORMAN R. SMITH
Assistant United States Attorney

Recommended bond: $25,000 unsecured.